UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFRACOST INC.; and HASSAN KHAJEH HOSSEINI,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>ANTONY BLINKEN, Secretary of State,<br><br>　　　　　　　　　　　Defendant. | Case No.:  23-CV-2226 JLS (MSB)<br><br>**ORDER (1) DENYING PLAINTIFFS' *EX PARTE* REQUEST FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY AND (2) GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF Nos. 4, 8) |

Presently before the Court is a Motion to Dismiss ("Mot.," ECF No. 4) filed by Defendant Antony Blinken.  Plaintiffs Infracost Inc. and Hassan Khajeh Hosseini (collectively, "Plaintiffs") filed an Opposition to the Motion ("Opp'n," ECF No. 5), and Defendant filed a Reply ("Reply," ECF No. 6).  The Court took the matter under submission without oral argument on March 7, 2024.  *See* ECF No. 7.  Plaintiffs then filed an *Ex Parte* Request for Leave to File Notice of Supplemental Authority ("Req.," ECF No. 8), which Defendant opposed ("Req. Opp'n," ECF No. 9).  Having carefully considered the Complaint ("Compl.," ECF No. 1), the Parties' submissions, and the law, the Court **DENIES** Plaintiffs' Request and **GRANTS** Defendant's Motion.

/ / /

/ / /

# BACKGROUND

Infracost Inc. ("Infracost") is a San-Diego-based, Delaware-incorporated software company that "has received millions of angel and early investments from several U.S. venture capital firms." Compl. ¶¶ 22, 38.  Hosseini, Infracost's co-founder and chief executive officer ("CEO"), seeks a O-1A nonimmigrant visa[1] that would allow him to work and reside within the United States.  *Id.* ¶¶ 23, 25.  Per the Complaint, Hosseini's absence from the United States causes Infracost "financial hardship and loss of opportunities," as "his leadership and resourcefulness are essential to the company's success."  *Id.* ¶ 5.  Plaintiffs also allege that Hosseini's "professional progression" is hindered by his inability to work in the United States, as "he cannot come to the company for face-to-face conversations with his employees and connect with fellow CEOs and clients."  *Id.* ¶ 58.  Without Hosseini in San Diego, Infracost "is at risk of losing the investment in the U.S. and winding down the U.S. operations."  *Id.*

Infracost filed an O-1A petition[2] on Hosseini's behalf in late November of 2022.  *Id.* ¶ 39.  The United States Citizenship and Immigration Service ("USCIS") approved the petition on December 8, 2022, and Hosseini filed his visa application with the United States Embassy in London ten days later.  *Id.* ¶ 3.  He attended an interview on February 24, 2023.  *Id.* ¶ 4.

Either at the interview or shortly thereafter, the Department of State ("Department") placed Hosseini's case in "administrative processing" and requested additional information from Hosseini.  *Id.* ¶¶ 4, 50.  Hosseini "provided the requested documents within a week."  *Id.* ¶ 40.  Since then, Hosseini has received "no decision or explanation from the Embassy."  *Id.* ¶ 41.  Instead, the online case status report for his application states "Refused," indicates

---

[1] O-1A visas allow noncitizens with "extraordinary ability in the sciences, arts, education, business, or athletics" to "com[e] temporarily to the United States to continue work in the area of extraordinary ability." 8 C.F.R. § 214.2(o)(1)(ii)(A)(1).

[2] No noncitizen may apply for an O-1A visa until their employer files a petition "for a determination of the alien's eligibility." *Id.* § 214.2(o)(1)(i).

23-CV-2226 JLS (MSB)

Hosseini's "case will remain refused while undergoing . . . processing," and clarifies that Hosseini "will receive another adjudication once such processing is complete." *Id.* Hosseini's "multiple inquires" to the London Embassy have resulted in only "templated responses" repeating that "administrative processing remains underway," that "[n]o additional information or documentation is required at this time," and that he will be "contacted directly as soon as the processing is complete." *Id.* ¶ 42; ECF No. 1-3 at 1.

This delay in adjudicating Hosseini's visa application "has placed severe emotional and financial strain on [Hosseini]." *See* Compl. ¶ 5.  Hosseini "has to maintain his residence in the U.S. even though he cannot get the visa to come to the States." *Id.* ¶ 8. Moreover, the Complaint states:

> Plaintiff suffers that trauma [sic], depression, and anxiety caused by this unreasonable delay.  These stresses often manifest in "failure to thrive" symptoms—where individuals succumb to losing their will to live.

*Id.* ¶ 59.

Plaintiffs commenced this action approximately nine months after the interview, seeking to compel Defendant—sued in his official capacity as Secretary of the Department—to issue a final decision on Hosseini's visa application.  Plaintiffs bring two causes of action.  First, Plaintiffs bring a claim under 5 U.S.C. § 706, a provision of the federal Administrative Procedure Act ("APA").  *Id.* ¶¶ 67–85.  Second, Plaintiffs seek relief through the Mandamus Act, 28 U.S.C. § 1361.  *Id.* ¶¶ 86–97.  The instant Motion— seeking to dismiss the Complaint in its entirety under Rules 12(b)(1) and 12(b)(6)— followed.

## REQUEST FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY

After the Court took this matter under submission, Plaintiffs sought to direct this Court's attention to an additional precedent. Req. at 1.  Defendant opposed, arguing that the Request advances new arguments outside the pleadings. Req. Opp'n at 1.  In the precedent referenced by the Request, a federal district court in the Central District of California denied a motion to dismiss in a case involving similar issues. Req. at 1.

A district court may grant a request to supplement authorities where the supplemental authorities control the outcome of the litigation; *i.e.*, are "precedential," "particularly persuasive," or "helpful." *Hunt v. Washoe Cnty. Sch. Dist.*, No. 318CV00501LRHWGC, 2019 WL 4262510, at *3 (D. Nev. Sept. 9, 2019). Notices of supplemental authority, however, should not advance additional argument—for example, by "provid[ing] a detailed description of the case's . . . issues." *Schnellecke Logistics USA LLC v. Lucid USA Inc.*, No. CV-22-01893-PHX-SMB, 2023 WL 5720242, at *1 (D. Ariz. Apr. 12, 2023).

The Court will **DENY** Plaintiffs' Request. First, to the extent the Request describes the findings of the proffered authority and analogizes to this case, it improperly advances additional argument. *See id.* Second, though the proffered authority has persuasive value, it is (1) non-binding and (2) largely duplicative of authority already cited in Plaintiffs' Opposition, *see* Opp'n at 9–16.

That said, the Court will not ignore the proffered authority, but instead will give it the same consideration it would give any other persuasive authority it discovered through its own research. *See EEOC v. Kovacevich "5" Farms*, No. 1:06 CV 0165 OWW TAG, 2006 WL 3060149, at *2 (E.D. Cal. Oct. 27, 2006) ("Because any decision on a motion should comply with the law, appropriate legal authority should not be disregarded merely because it was not cited in an initial brief.").

## MOTION TO DISMISS

### I.   Legal Standards

#### A.   *Federal Rule of Civil Procedure 12(b)(1)*

Federal courts are courts of limited jurisdiction and thus have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965–66 (9th Cir. 1983). The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

///

Under Federal Rule of Civil Procedure 12(b)(1), a party may raise by motion the defense that the complaint lacks subject-matter jurisdiction and may do so via a facial or factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient . . . to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

In a factual attack, on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In such challenges, courts (1) "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and (2) "need not presume the truthfulness of the plaintiff's allegations." *Id.* After the moving party evidences the lack of subject-matter jurisdiction, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

Dismissal under Rule 12(b)(1) is warranted "where the alleged claim under the [C]onstitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Safe Air*, 373 F.3d at 1039 (internal quotation marks omitted) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). But dismissal under 12(b)(1) is not appropriate when "'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

### B.    Federal Rule of Civil Procedure 12(b)(6)[3]

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." A court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is not to say that the claim must be probable, but there

---

[3] Both Parties invite the Court to consider extra-pleading materials when resolving Defendant's 12(b)(6) arguments. Defendant submits a declaration by a Department employee. *See* Decl. Samuel W. McDonald ("McDonald Decl."), ECF No. 4–1. Plaintiffs in turn submit a slew of material alongside their Opposition, including emails purportedly sent by consular officials to lawyers and declarations purportedly submitted by Department employees in other cases. *See* Opp'n Exs., ECF Nos. 5-1–5-3. The Court, however, "may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)" unless said materials are incorporated by reference into the complaint or are subject to judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Defendant offers no argument supporting this Court's ability to consider the McDonald Declaration. And, though Plaintiffs cite *Marciano v. Shulman* to suggest that courts may consider materials submitted alongside a plaintiff's opposition, that case supports only the conclusion that courts may take judicial notice of court records in select circumstances. *See* No. 09-01499 (HHK), 2010 U.S. Dist. LEXIS 142696, at *2 (D.D.C. Sep. 2, 2010). As neither party has persuaded the Court that it may consider their extra-pleading submissions, the Court will consider only the Complaint, its Exhibits, and the Parties' arguments.

23-CV-2226 JLS (MSB)

must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" do not demonstrate a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Review under Rule 8(a) requires a context-specific analysis involving a court's "judicial experience and common sense." *Id.* at 679. A court must "accept[] all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). That said, the Court need not accept as true "legal conclusions" contained in the complaint. *Iqbal*, 556 U.S. at 678.

If a complaint does not state a plausible claim for relief, a court should grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "The Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

## DISCUSSION

Plaintiffs' central contention is that Defendant has unreasonably delayed the final adjudication of Hosseini's visa application in violation of 5 U.S.C. § 706(1) and/or the Mandamus Act. *See* Opp'n at 12–25. Defendant construes the Complaint as such. *See, e.g.*, Mot. at 5 & n.2. And nowhere in the Opposition do Plaintiffs (1) object to Defendant's characterization of the Complaint or (2) discuss claims based in other prongs of the APA. Given Plaintiffs' failure to defend claims other than those sounding in unreasonable delay, the Court deems abandoned any potential claim under 5 U.S.C. § 706(2) (allowing courts

/ / /

/ / /

/ / /

to set aside, for enumerated reasons, final agency action).[4]  *See Rashidian v. Garland*, No. CV 1:23-1187 (ACR), 2024 WL 1076810, at \*9 (D.D.C. Mar. 8, 2024) (finding that the plaintiff forfeited any § 706(2)(A) claim in identical circumstances); *Bortz v. JPMorgan Chase Bank, N.A.*, No. 21-CV-618 TWR (DEB), 2022 WL 1489832, at \*7 (S.D. Cal. May 10, 2022), *aff'd*, No. 22-55582, 2023 WL 4700640 (9th Cir. July 24, 2023).  The Court thus addresses only Plaintiffs' claims under § 706(1) and the Mandamus Act.

For the reasons that follow, the Court concludes that Plaintiffs have not stated a plausible claim for relief under either statute.

## I.    Interaction between the APA and Mandamus Act

Section 706(1) of the APA allows courts to "compel agency action unlawfully withheld or unreasonably delayed."[5] 5 U.S.C. § 706(1).  "[A] court may compel [delayed] agency action under the APA when the agency (1) has 'a clear, certain, and mandatory duty' and (2) has unreasonably delayed in performing such duty."  *Vaz v. Neal*, 33 F.4th 1131, 1136 (9th Cir. 2022) (citations omitted) (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021)).

---

[4] Even if Plaintiffs had not forfeited such a claim, the Court would dismiss it on the merits, as Plaintiffs have not specified what final agency action they would like the Court to "set aside." *See* 5 U.S.C. § 706(2); *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 620 (D.C. Cir. 2020).  This flaw is apparent in two respects.  First, because Defendant has not yet finally adjudicated Hosseini's application, *see* Compl. ¶¶ 5, 37, 41; there is no final agency action with respect to Hosseini's application for Plaintiffs to challenge under § 706(2). *Lee v. Blinken*, No. 23-CV-1783 (DLF), 2024 WL 639635, at \*7 (D.D.C. Feb. 15, 2024).  Second, to the extent Plaintiffs seek to challenge some other form of final agency action— *e.g.*, a regulation—that might be contributing to the alleged delay, the Complaint fails to identify said action.  The Complaint's conclusory reference to Department "policies, procedures, and practices," Compl. ¶ 82, is insufficient. *See, e.g.*, *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1318–21 (S.D. Cal. 2018) (dismissing § 706(2) claim based on the complaint's failure to plausibly identify a written or unwritten policy constituting final agency action).

[5] "[A]n action is 'unlawfully withheld' if 'Congress has specifically provided a deadline for performance' and the agency has not met that deadline." *Alaska Indus. Dev. & Exp. Auth. v. Biden*, No. 3:21-CV-00245-SLG, 2023 WL 5021555, at \*27 (D. Alaska Aug. 7, 2023) (quoting *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002)); *see also Oregon Nat. Desert Ass'n v. Bushue*, 644 F. Supp. 3d 813, 838–39 (D. Or. 2022).  Plaintiffs concede "there is no deadline" by which Defendant must issue a decision on Hosseini's application. *See* Opp'n at 13, 17, 22.  So, Plaintiffs cannot state a claim for violation of § 706(1)'s "unlawfully withheld" prong.

Relatedly, to compel governmental action under the Mandamus Act,[6] a court must find that "(1) the plaintiff's claim is clear and certain; (2) the duty is 'ministerial and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995) (internal quotation marks omitted) (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)).

The Ninth Circuit has recognized that the relief sought under the Mandamus Act and under § 706(1) of the APA is "essentially the same." *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). So, "when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [a court] may elect to analyze the APA claim only." *Vaz*, 33 F.4th at 1135. Here, the APA offers the exact remedy Plaintiffs seek under the Mandamus Act—the compulsion of unreasonably delayed agency action. The Court will thus analyze Plaintiffs' APA claim only. *See Shahijani v. Laitinen*, No. 223CV03967RGKMRW, 2023 WL 6889774, at *2 (C.D. Cal. Oct. 6, 2023) ("Where, as here, a plaintiff seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze both claims under the APA only."). If Plaintiffs' APA claim fails, their claim under the Mandamus Act fails as well. *See Vaz*, 33 F.4th at 1138–39.

The Court has subject matter jurisdiction over Plaintiffs' APA claims pursuant to 28 U.S.C. § 1331. *See id.* at 1135. Whether Plaintiffs' APA claim may proceed, therefore, depends on whether it survives scrutiny under Rule 12(b)(6). *See Plaskett*, 18 F.4th at 1082 ("Any deficiencies as to the APA claim go to the merits of that cause of action rather than to the subject matter jurisdiction of the court to consider it.").

## II.    Mandatory Duty

Defendant first asserts the Department is not subject to a mandatory duty within the meaning of the APA. Courts have split on the issue.

---

[6] The Mandamus Act allows a district court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See* 28 U.S.C. § 1361.

Some courts have found a non-discretionary duty to adjudicate nonimmigrant visa applications to finality in 8 U.S.C. § 1202(d). *See* 8 U.S.C. § 1202(d) (stating in relevant part that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer"); *Rai v. Biden*, 567 F. Supp. 3d 180, 195 (D.D.C. 2021); *Gomez v. Trump*, 485 F. Supp. 3d 145, 198 n.23 (D.D.C. 2020); *Anid Infosoft LLC v. Blinken*, No. 1:22-CV-4721-TWT, 2023 WL 7312488, at *4 (N.D. Ga. Nov. 3, 2023). Not all agree, however. *See, e.g.*, *Mueller v. Blinken*, No. 4:23-CV-24, 2023 WL 4759245, at *2–4 (E.D. Va. July 17, 2023) (declining to read a near-identical subsection governing immigrant visas—8 U.S.C. § 1202(b)—in this manner).

Other courts have found a similar mandatory duty under 22 C.F.R. § 41.121(a) (requiring consular officers to issue or refuse nonimmigrant visas) and/or 22 C.F.R § 41.106 (requiring consular officers to process visa application forms "properly and promptly"). *See, e.g.*, *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020). This approach also has its detractors, though. *See, e.g.*, *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 157 (D.D.C. 2022) (noting 22 C.F.R. § 41.121(a) requires consular officers only to "make an initial, rather than a final, determination about an applicant's visa eligibility"); *Senobarian v. Blinken*, No. 223CV07208ODWMAAX, 2024 WL 897566, at *3 (C.D. Cal. Feb. 29, 2024) (applying doctrine of consular nonreviewability to consular office's alleged refusal for administrative processing).

Finally, many courts have discerned from 5 U.S.C. § 555(b) a general, nondiscretionary duty for administrative agencies to "pass upon a matter presented to [them]" within a reasonable time. *See, e.g.*, *Khazaei v. Blinken*, No. CV 23-1419 (JEB), 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023); *Iqbal v. Blinken*, No. 223CV01299KJMKJN, 2023 WL 7418353, at *7 (E.D. Cal. Nov. 9, 2023). These courts reason that visa applications constitute discrete matters upon which the Department—an agency—must pass.

/ / /

Defendant fails to address any of the above three approaches.  Instead, Defendant contends that because the Department is not subject to "statutory or regulatory provisions that mandate *time limits* for consular processing," it is not subject to a mandatory duty within the meaning of 5 U.S.C. § 706(1).  Reply at 2 (emphasis added).  But a mandatory duty to act may exist without a mandatory deadline.  If that were not so, § 706(1)'s unreasonable-delay prong would be superfluous; in contrast to actions alleging unlawful withholding, actions alleging unreasonable delay by definition involve situations where an agency has a mandatory duty, but has not violated a mandatory deadline.  *See Bushue*, 644 F. Supp. 3d at 838–845 (denying relief under § 706(1)'s "unlawfully withheld" prong because the agency was not subject to a binding deadline, but nevertheless providing relief under 706(1)'s "unreasonable delay" prong).

Setting Defendant's failure to engage with relevant precedent aside, the Court need not resolve the issue.  Assuming a mandatory duty exists, Plaintiffs have not plausibly alleged unreasonable delay.

## III.   Unreasonable Delay

To determine whether an agency has performed its duty within a reasonable time, the Ninth Circuit "use[s] the *TRAC factors*—the six-factor balancing test announced in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*")."  *Vaz*, 33 F.4th at 1137.  These factors include:

> (1) the time agencies take to make decisions must be governed by a "rule of reason[";]
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id.* (alterations in original) (quoting *TRAC*, 750 F.2d at 80).  Though the first factor is "[t]he most important[,] . . . it, like the others, is not itself determinative."  *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017).  A Court should compel action under the *TRAC* factors only when the agency's failure to respond is "so egregious" as to warrant relief.  *TRAC*, 750 F.2d at 79.

Plaintiffs urge the Court to reserve application of the *TRAC* factors until Plaintiffs have had the opportunity for discovery.  *See* Opp'n at 15–16.  True, some courts have recognized that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage."  *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (internal quotation marks omitted) (quoting *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir 2021)).  But plaintiffs in visa-application cases must nevertheless plausibly allege unreasonable delay under the *TRAC* factors to survive a motion to dismiss.  *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 338–40 (D.C. Cir. 2023) (affirming dismissal, under Rule 12(b)(6), of lawsuits alleging that decisions on visa-related petitions had not been issued after approximately four years); *Shahijani*, 2023 WL 6889774, at *3; *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 52–53 (S.D.N.Y. 2020).  Indeed, authorizing discovery without such a showing would "lead to a substantial imposition on the Government" given "the surfeit of lawsuits challenging delays in processing visa applications."  *Rashidi v. U.S. Dep't of State*, No. CV 23-1569 (JEB), 2023 WL 6460030, at *7 (D.D.C. Oct. 4, 2023).

Accordingly, the Court will proceed to evaluate the *TRAC* factors.  In the visa context, the "considerations contemplated by the *TRAC* factors can be grouped into four basic inquiries":

> "First, is there any rhyme or reason—congressionally prescribed or otherwise—for [an agency]'s delay (factors one and two)?

> Second, what are the consequences of delay if the Court does not compel the [agency] to act (factors three and five)?  [Third], how might forcing the agency to act thwart its ability to address other priorities (factor four)?"  Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Sawahreh*, 630 F. Supp. 3d at 161 (alterations in original and citation omitted) (quoting *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

### 1.      Factor One: Rule of Reason

"In the context of a . . . visa application, the first factor requires courts to consider both the length of the delay and the reasons for the delay."  *Shahijani*, 2023 WL 6889774, at *3.  As noted in *Tate v. Pompeo*,

> Whether a "rule of reason" exists for agency action "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."

513 F. Supp. 3d 132, 148 (D.D.C. 2021) (alteration in original) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).

Where visa applications are concerned, courts often begin with the length of delay, turning to precedent to determine whether a delay's length renders it plausibly unreasonable.  *See, e.g.*, *Sawahreh*, 630 F. Supp. 3d at 162; *Sha v. Blinken*, No. 2:23-CV-05126-SVW-AS, 2023 WL 9379189, at *4 (C.D. Cal. Dec. 15, 2023).  Here, Plaintiffs filed the Complaint approximately nine months after Hosseini's application was placed in administrative processing, and this litigation has now been pending for approximately five months.  This fourteen-month administrative-processing-related delay is comparable to those considered insufficient to state a plausible claim for relief in analogous cases.  *See, e.g.*, *Shahijani*, 2023 WL 6889774, at *4 (eight-month delay); *Davila v. Cohan*, No. 23-CV-1532 JLS (BLM), 2024 WL 711618, at *7 (S.D. Cal. Feb. 21, 2024) (ten-month delay);

*Sawahreh*, 630 F. Supp. 3d at 162 (fifteen-month delay); *Sharifymoghaddam v. Blinken*, No. 23-CV-1472-RCL, 2024 WL 939991, at *5 (D.D.C. Mar. 5, 2024) (same); *Fakhimi v. Dep't of State*, No. CV 23-1127 (CKK), 2023 WL 6976073, at *8 (D.D.C. Oct. 23, 2023) (eighteen-month delay).   And other courts have deemed much longer delays reasonable. *See Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (noting immigration delays in excess of five, six, or seven years are generally found unreasonable, those between three and five years are often found reasonable, and that delay of "slightly more than a year is drastically short of what constitutes an unreasonable delay"); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014) ("In this district, courts have generally found delays of four years or less not to be unreasonable."); *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *6 & n.6 (D.D.C. Sept. 8, 2022) (explaining courts generally measure delay from the last government action to the issuance of the court's opinion and dismissing claim for unreasonable delay where the visa application remained in administrative processing for thirty-two months).[7]

Plaintiffs seek to distinguish many cases on grounds that they were decided during the height of the pandemic.  *Sharifymoghaddam*, however, was decided approximately one month ago, and *Yavari* entirely predates the pandemic.   Moreover, *Skalka*—another immigration-related case predating the pandemic—found that an approximately two-year delay "does not typically require judicial intervention."  246 F. Supp. 3d at 154.  The cessation of pandemic-related operational hindrances, therefore, does not change the Court's conclusion that the length of delay in this case is not egregious.

Length of delay alone, however, is not dispositive—the Court must also consider the reasons behind the delay.  The Complaint alleges that after the interview, the Department

---

[7] Even if the Court were to measure delay from the date Infracost submitted its petition, the Court's analysis would not change.  Infracost filed the petition on behalf of Hosseini approximately seventeen months ago, s*ee* Compl. ¶ 2, which still falls well within the time range generally considered reasonable by courts.  *See Yavari*, 2019 WL 6720995, at *8.

requested additional information from Hosseini.  Compl. ¶ 40.  So, this is not a case where there is no identifiable rationale behind Defendant's delay; the Department appears to have needed additional information to reach a decision.  Moreover, the decision to grant a visa frequently implicates "'relations with foreign powers[]' or involve[s] 'classifications defined in the light of changing political and economic circumstances,'" *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (internal quotation marks omitted) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)).  The Court thus recognizes that making a final determination on a visa application implicates complex matters that fall outside of courts' typical expertise.  *See Qureshi v. Napolitano*, No. C-11-05814-YGR, 2012 WL 2503828, at \*4 (N.D. Cal. June 28, 2012) (noting courts consider the complexity of the agency investigation when determining whether a delay is reasonable).  Given the sensitive nature of the visa determination, a delay to process additional information about an applicant is not facially unreasonable.  *See Barazandeh v. U.S. Dep't of State*, No. CV 23-1581 (BAH), 2024 WL 341166, at \*8 (D.D.C. Jan. 30, 2024).

As the alleged delay in Plaintiffs' case is within the range of delay considered reasonable by courts in visa-application cases, and the cause of the delay does not appear, from the Complaint, to lack reason, the first *TRAC* factor weighs strongly in Defendant's favor.

### 2.   Factor Two: Congressional Timetable or Indication of Speed

The second *TRAC* factor asks whether Congress has provided "a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80.  Plaintiffs argue that this factor favors them, as 8 U.S.C. § 1571(b) states: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ."

Because the Ninth Circuit has held that similar "sense of Congress" language is "non-binding, legislative dicta," *Yang v. Cal. Dep't of Soc. Servs.*, 183 F.3d 953, 961–62 (9th Cir. 1999), multiple courts have refused to weigh the second *TRAC* factor in favor of visa applicants based on § 1571(b).  *See, e.g.*, *Shahijani*, 2023 WL 6889774, at \*4; *Ortiz v.*

*U.S. Dep't of State*, No. 1:22-CV-00508-AKB, 2023 WL 4407569, at \*7–8 (D. Idaho July 7, 2023).  Other courts, however, have recognized that statutory timelines referenced by Congress, even if aspirational, are due some weight in the *TRAC* analysis.  *See, e.g.*, *Da Costa*, 80 F.4th at 344.  The Court agrees with these latter courts.

The weight accorded this factor, however, is slim.  *See id.* (declining to give significant weight to factor two as "the delay has not reached the level of disproportionality [the D.C. Circuit has] previously held sufficient to grant relief").  Indeed, "a contrary conclusion would ignore 'the overwhelming caselaw rejecting unreasonable delay challenges for applications pending well beyond the 180-day window that Congress contemplated in 8 U.S.C. § 1571(b).'"  *Ortiz*, 2023 WL 4407569, at \*7 (quoting *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 167 (D.D.C. 2021)).

> 3.  *Factors Three and Five: Nature of Interest Prejudiced by Delay and Whether Health and Human Welfare Are at Stake.*

Factors three and five—concerning the impact of the delay on Plaintiffs—also help Plaintiffs, but again only slightly.  The Court is sympathetic to the anxiety Hosseini is experiencing as this delay continues, *see* Compl. ¶ 59, and recognizes that Hosseini's career—and his company—would likely benefit from Hosseini's in-person presence.  *See* Compl. ¶¶ 57–58.  That said, these "financial harms . . . , along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip *TRAC* factors three and five in [Plaintiffs'] favor."  *Da Costa*, 80 F.4th at 345; *see also Sharifymoghaddam*, 2024 WL 939991, at \*6 (recognizing impact of delay on plaintiffs' career progression, but nevertheless concluding factors three and five are "only slightly beneficial to plaintiffs" because "the alleged adverse effects are relatively minor compared to other employment visa applicants").

> 4.  *Factor Four: Effect on Competing Priorities*

Factor four—whether compelling the agency to act would detract from its higher or competing priorities—weighs strongly in Defendant's favor.  In *Vaz*, the Ninth Circuit affirmed summary judgment over a plaintiff's claim of unreasonable delay with respect to

an Executive Office for Immigration Review ("EOIR") investigation, reasoning that,

> The EOIR has limited resources and has hundreds of pending complaints, many of which were received before [the plaintiff] filed his complaint and presumably some of which the EOIR has determined merit priority. Requiring the EOIR to investigate [the plaintiff]'s complaint would interfere with the EOIR's discretion in prioritizing its activities and allocating its resources.

33 F.4th at 1138. In so holding, the Ninth Circuit cited *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991). There, the D.C. Circuit denied relief under the *TRAC* factors, even though other factors favored relief, when ordering relief would place the petitioner at the head of a queue of agency adjudications without producing a net gain. *Id.*

In numerous cases involving visa applications, courts have applied *Barr* and concluded that the fourth *TRAC* factor weighs strongly in favor of the government at the 12(b)(6) stage. These courts reason that expediting plaintiffs' applications would "necessarily come 'at the expense of other similarly situated applicants.'" *Da Costa*, 80 F.4th at 344 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016)); *see also Skalka*, 246 F. Supp. 3d at 154 (concluding processing of visa applications is "the very type of agency action . . . that if compelled would presumably delay other adjudications"). So too where plaintiffs have alleged post-interview delay related to administrative processing. *E.g.*, *Shahijani*, 2023 WL 6889774, at *5; *Davila*, 2024 WL 711618, at *8; *Sha*, 2023 WL 9379189, at *5.

Plaintiffs point out that Defendant "has not shown there would be any undue burden on agency resources by 'expediting' action on [Hosseini's] case" and "has provided no evidence as to how many . . . applications have been pending longer than [Hosseini's] application." Opp'n at 23. This argument ignores, however, that Plaintiffs must state a plausible claim for relief under the *TRAC* factors before they can compel discovery from Defendant. Moreover, "one need not unearth the details of the visa-adjudication process at [embassies] and elsewhere to surmise that the relief Plaintiffs seek would reorder [Department] priorities. That outcome is obvious '[w]here the agency action sought is one

of many similar adjudications that the agency must complete.'"  *Rashidi*, 2023 WL 6460030, at *6 (alteration in original) (quoting *Skalka*, 246 F. Supp. 3d at 153).

As Plaintiffs' requested relief would necessarily (1) impact the processing of similarly situated applicants and (2) reorder Department priorities, factor four strongly favors Defendant.

### 5.   Factor Six: Agency Impropriety

The sixth factor—which concerns impropriety by the agency—is neutral.  As *TRAC* emphasized that plaintiffs need not assert impropriety to prevail, the absence of impropriety does not weigh against Plaintiffs.  750 F.2d at 80.  But neither does the sixth factor weigh in Plaintiffs' favor.  Plaintiffs contend that the mere existence of the delay—and the absence of efforts by Defendant to either expedite Hosseini's application or provide a substantial update—itself constitutes "extreme bad faith."  Opp'n at 25.  This argument misunderstands factor six, which focuses on not on the delay itself, but whether the reason behind the delay is improper (*e.g.*, intentional, motivated by animus).  *See Sawahreh*, 630 F. Supp. 3d at 164; *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984) (implying impropriety—in the form of industry pressure—played a role in the agency's delay). The Complaint does not plausibly allege such impropriety.  *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 320 (D.D.C. 2020) (noting that criticism of the defendants "efforts and prioritization" does not constitute allegations of impropriety); *Babaei v. U.S. Dep't of State*, No. CV 23-1244 (TJK), 2024 WL 1178453, at *8 (D.D.C. Mar. 19, 2024) (rejecting argument that length of delay creates an appearance of impropriety).

In sum, based on Plaintiffs' allegations, the Court finds that Plaintiffs have not plausibly alleged unreasonable delay.  The length of the alleged delay has not yet approached that of delays considered unreasonable by courts, Plaintiffs' allegations do not suggest that the delay lacks reason, and granting Plaintiffs' requested relief would both infringe on Defendant's ability to prioritize Department resources and affect the processing of other applicants.  At this stage, these considerations are dispositive.  Consequently, the

Court **DISMISSES** Plaintiffs' claim for unreasonable delay under the APA and Plaintiffs' claim under the Mandamus Act.

The Court does not take lightly, however, the impact of this delay on Plaintiffs. Though judicial intervention is not warranted at this juncture, the Court's calculus could change if the delay continues for a more extended period.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 4).  As the Court concludes that no amendment consistent with Plaintiffs' Complaint would change the Court's conclusion regarding unreasonable delay at this time, the Court **DISMISSES** Plaintiffs' Complaint **WITHOUT LEAVE TO AMEND**.  *See Shahijani*, 2023 WL 6889774, at *5; *see also* Order, *Da Costa v. Immigr. Inv. Program Off.*, No. 22-1576 (JEB) (D.D.C. 2022), ECF No. 16 (dismissing entire unreasonable-delay action, without mention of leave to amend, after granting the defendants' motion to dismiss), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023).  This dismissal, however, is **WITHOUT PREJUDICE** to refiling should later circumstances demonstrate an unreasonable delay. *See id.*  As this concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  April 30, 2024

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

19

23-CV-2226 JLS (MSB)